Good morning, Your Honor. May it please the court, my name is Amelia Bizzaro and I represent the appellant Paul Milton. A change of pace from Indian jurisdiction, today we're talking about a 2254 habeas case. I'm going to try to reserve two minutes for rebuttal. This court should remand this case for an evidentiary hearing on Mr. Milton's ineffective assistance of counsel claim. He was convicted of a crime that he never committed, and everybody agrees to that. He was convicted of grand larceny greater than $2,500. That's not a crime that occurred here. It was ostensibly part of a plea deal. Is that in itself a constitutional violation under any United States Supreme Court case? I think that's a tough question. I mean, I think there always has to be a factual basis for a plea, but whether a person can through way of a factual basis to get some benefit, I think that that's a lot of how the agreements work. I mean, should I read Alford to say if it's going to be an Alford plea, there has to be a factual basis and it can't be fantasy? Yes, because in Alford they're saying, I agree that you could approve these facts against me and that these facts amount to this crime, but I am not saying that I did it, but I want the benefit. The facts look really bad for me, but I didn't do it anyway. Right. And so there's still in that sense, there's still a factual basis in support of the crime. So this may be a Yes. Did you ever make that argument? I didn't make that argument. And it may or may not be a winner, but that's one of the things that bothers me about this case. I think for me too, it was strange, this concept of fictitious plea that everybody in court sort of openly acknowledged this didn't happen, but you're going to plea to it. I have trouble with that phrase fictitious plea because in terms of the plea, everything was regular about the conviction. He entered a plea. The explanation was made by the judge and he made a strategic decision to go with a particular set of charges or claims against him and admit to those in order to derive a sentencing benefit. So I don't understand how you can characterize that as a fictional plea. That's the term that the trial court used. That's just the term of art in Nevada is fictitious plea. But second from that, Your Honor, I think the question is, is it like fake news? I don't know if it's quite fake news. To me, the question is, was there a strategy reason for entering this plea? It's hard for me to discern the benefit here. He was facing burglary and attempted murder. Wasn't there an availability of parole under one but not under the other? That's a reason that the government provides. They say, well, if he were convicted of grand larceny, probation was a possibility. But with burglary, that's not the case because he had a prior conviction. But that's an illusory... He said that. I thought Mr. Melton said, I hope I can get parole here. I don't think so. I think he said the opposite. I think in his elocution, he said, I know you're going to habitualize me. What I'm asking for is not 10 to life, which is what the government was asking for. To me, the idea of probation is illusory at best because this was a case from pretty early on. The state made clear it was seeking the large habitual criminal statute. Nevada has two, a small, which is 8 to 20, and a large, which is 10 to 25, 10 to life, or life without. The government made it clear that that's what it was seeking, one of those three options. The idea then that he could get probation, it's just not real. It's not a possibility. Why isn't this like a conditional plea where the defendant doesn't admit except for purposes of moving the case ahead so that they can test whatever legal issues they want to? Why isn't this like that? Because I think the question here goes to the admission of the plea in the first instance. Mr. Milton has made claims in his pro se state and federal habeas petitions about the advice that he got from counsel about counsel's lack of investigation about the conflict between the two of them. That all goes to the entrance of the plea at all, as opposed to a conditional plea where there's maybe some legal issue, a search or something like that that the parties wish to preserve and litigate later. In here, the circumstances of the plea simply aren't known to us. We don't have in the record the transcript of the beginning of the trial, of the voir dire. We just have the plea itself. He goes to trial, they get through jury selection, and all of a sudden we have this plea. I simply can't see the benefit to this plea because the burglary is one to ten, attempted grand larceny is up to 364 days in jail. Now that's what he's facing when he starts the trial. Then he comes and all of a sudden there's this plea deal, and the plea deal is for this $3,500. Now we're back to one to ten. So what benefit was derived from it? And I think it goes to what the discussion was between the attorney and Mr. Melton, how the plea deal came about at all. And we simply don't have that evidence in this record. And I think remand then is appropriate to develop it. Well, we can't on habeas, right? You know, it has to be raised before the state court unless we were to find that there was, that the state court unreasonably applied Strickland. Columby Pinholster tells us there can't be an evidentiary hearing. Well, in the state court, Mr. Melton asked repeatedly for the assistance of counsel for discovery and for an evidentiary hearing, and the state shut him down across the board. He had no opportunity to develop the record. He said, for example, I think in his, once he appealed to the Nevada Supreme Court, he filed essentially a petition for rehearing and he said, listen, I can't even get the documents that I need. I can't even, I can't get what I need to do this. So I think that shows then we could have a hearing in this case, to develop the facts, to take a look at Strickland. I didn't see an argument that the state court made an unreasonable determination of the facts. Did you raise that argument by not having an evidentiary hearing? I raised the argument that under Williams v. Taylor, the state impeded any development of the facts. I think when it comes to the decision that we have right now from the Nevada Supreme Court, they don't apply Strickland at all. What they say is, you know, you court below, you didn't get it wrong, you did not err. But it doesn't say, for example, here are the facts that Mr. Melton tried to present. We don't see deficient performance. And it didn't say the opposite either. Even assuming deficient performance, there's no prejudice. It doesn't analyze Strickland in any way. Well, the government, I think, had made it clear when they were plea bargaining, we don't have that record either about what the plea offer was, what the negotiations were. You referenced that we don't have evidence of the conversation between the defense counsel and Mr. Melton, but we don't know what the plea offer was and what the government was holding out for. But we knew that this conviction was coming at the end of a long trail of prior convictions, and that he was going to suffer at the sentencing phase some enhancement, and probably some substantial enhancement. And as the district judge, or the trial judge, I should say, reviewed the matter at sentencing, he expressed some frustration that this guy's not getting the point. And so I'm going to really lower the boom on you. That was the gist of what he said. So the government was wanting an enhancement of some substance because of his prior criminal history. So if we accept your interpretation, where does that possibility of enhancement get played out in the sentencing structure? It goes to show that the plea deal really wasn't a deal. Because if he goes to trial and he's convicted of the burglary or the attempted grand larceny, either one of them, if any conviction comes out of that trial at all, he's facing this exact same enhancement. He's facing the exact same habitual criminal statute. So to me, it shows that there wasn't a deal. And there's just too much information that we don't know, that we don't have, that Mr. Melton wasn't able to develop on his own. Do you think there was some insufficiency or inadequacy in the colloquy between the court and Mr. Melton? Or was it all in the relationship with the defense counsel? I think if there's any inadequacy, it's what Judge Fletcher mentioned with the factual basis, because there essentially wasn't one. But I think if you just look at the four corners of the complaint separate than that, then no, the questions the court asked were the appropriate ones that you expect in a plea hearing. If I may, I would like to reserve the last minute of my time. Good morning, Your Honors, and may it please the Court. Amanda Sage, Deputy Attorney General with the Nevada Attorney General's Office, on behalf of the respondent appellees in this matter. And I do think it is important after some of the questions to clarify the issues that are before this Court. The question is not whether this plea was valid. The question is whether the sentence imposed in this case violated the Eighth Amendment and was grossly disproportionate to the crimes. Well, it's not even that, is it? It's whether the Nevada Supreme Court erred in rejecting that claim, that it made an unreasonable application of any Supreme Court decision. Precisely. And when the Nevada Supreme Court decided this case in 2010, the only thing that the United States Supreme Court had said was clearly established is that grossly disproportionate standard, that the sentence cannot be grossly disproportionate to the crime. And certainly the fictitious plea, and again, that is just colloquial language from Nevada, but the fictitious plea does raise interesting questions, because the crime itself, the facts don't, the charged crime, the facts don't support. But we did have a preliminary hearing in this case, so there are the facts to show what Mr. Melton's behavior actually was, leading ultimately to this conviction. And it's also important to frame this correctly in that this sentence resulted not only from his behavior in this case, but from his 22-year criminal history, which included 10 prior felonies, at least 10 prior felonies, as many visits to prison, and numerous misdemeanor convictions. So this wasn't a sentence for mere shoplifting. This was a sentence for a man who ultimately actually committed burglary, which is a Category B felony. And attempted grand larceny, which I would like to correct, is what's considered a wobbler in Nevada. It's a Category D felony, or it could be treated as a misdemeanor. So while he could have ultimately been sentenced for a gross misdemeanor on the attempted grand larceny. What's the dollar amount for grand larceny? Well, there's multiple levels. There's $250 to $2,500, and then what he pled to was $2,500 and above. And at what point does it become grand larceny as distinct from larceny? The $250. Okay. And so then the attempted grand larceny, which is what he was ultimately charged with, or what he was initially charged with, can be treated either as a Category D felony at sentencing or a gross misdemeanor. In this case, given his history and given what the judge ultimately did in this case, it's likely he would have been treated as a Category D felony. And because of that, both of those felony convictions, the burglary and the Category D felony, were subject to the same habitual enhancement and could have been run consecutive. So by taking the plea the way he did, he not only allowed himself the opportunity for probation, but he also eliminated that potential for very serious consecutive sentences in this case. But when we're looking at the Nevada Supreme Court- Was it probation or parole? Probation. Okay.  Yes, I know. He would have been eligible for parole, or he was eligible for probation with what he pled to. But when we're looking at the Nevada Supreme Court's decision and whether this sentence is grossly disproportionate to his actions, again, we have to take that criminal history into consideration. We have to look at the facts of what happened here. And I think it's clear that we can look at the underlying facts of what happened here, because the history of Supreme Court cases in this area are very fact-intensive. The Supreme Court has recognized that just saying grand larceny may not be specific enough to understand what the petitioner actually did. And so they look in all these cases, Rummel, Solemn, Estelle, they look at really what the underlying facts are of what the petitioner engaged in, and leading ultimately to this conviction. And I think we can do that in this case. To the extent, though, that we're talking about whether a fictitious plea is appropriate, that I don't think is clearly established Supreme Court precedent. The Supreme Court hasn't directly addressed how the Eighth Amendment would apply in this clear situation. So to that extent, we don't have clearly established precedent to go off of what the Nevada Supreme Court had was Harmonton and the concurrence, basically, from Kennedy that's been accepted as the grossly disproportionate standard. This sentence was, since it was 10 years to life, is apparently the same sentence for crimes under Nevada law for second-degree murder, kidnapping, sexual assault without substantial bodily harm. So given the actual offense, can we make a disproportionate, grossly disproportionate assessment on the basis of a comparison to these other statutes? I think if we frame the issue correctly, what he was sentenced for wasn't necessarily just grand larceny. It was the grand larceny and the history. And so because Nevada has said, when you have this type of history, we're going to treat you as if you're a Category A felon, which opens up the door to the sentences you talked about and is comparative to those sentences. So it's not simply that we're sentencing you as a Category A felon because it's a grand larceny. We're sentencing you to that because you have this history of felony cases leading up to this, and you've shown a complete disregard and a complete disability to comply to the society norms. And the Supreme Court has said that that is perfectly acceptable for states to take into consideration and to create laws that treat habitual offenders more seriously on their subsequent offenses. What's the Supreme Court case closest to this one? I would say that Rommel's probably the closest to this one. In Rommel, the defendant was sentenced to 12 years to life, I believe, for theft. I want to say it was maybe $250 involved in that case. Of course, it's from 1980, so the monetary value would be different. But what the Supreme Court noted in Rommel is that he had the ability for parole after 12 years, that he had criminal history. And in Rommel's case, it was only two prior felony convictions, whereas here we've got 10 prior felony convictions. But because of that history, it wasn't grossly disproportionate that he was not simply being sentenced for the thefts, he was being sentenced for his failure to comply with society's rules. And interestingly, I think if you look at Lockyer, which is actually an AEDPA case, the sentence that they upheld in that case was two sentences of 25 years to life in prison in 2008 for stealing some VHS tapes from a store. So pretty similar with a much more severe sentence two 25 to life sentences. And the Supreme Court said that that still was not grossly disproportionate. And so when you see where this case kind of falls in the middle, he's eligible for parole earlier than Rommel at 10 years instead of 12 years. He has a significantly longer criminal history than Rommel did with the 10 prior felony convictions. And the sentence is significantly less than in Lockyer. I don't think that we can say the Nevada Supreme Court's here is clearly contrary to Nevada to Supreme Court precedent or is grossly disproportionate to the crimes. The appellant's lawyer makes much relies heavily on the fact that this was no deal at all. And therefore, there had to be plainly ineffective assistance of counsel to let the everybody could reasonably predict what's going to happen. And that is the sentence he got. So would you explicate the deal that was provided here that provided a benefit to Mr. Melton? Absolutely. So initially, he was facing the potential for two felony convictions, the attempted grand larceny, which would have been a category D felony, and then the burglary, which is a category B felony. Both of those convictions would have qualified for the same sentence, the habitual offender sentence that he received. And the judge could have imposed those and run them consecutive to each other. So he could have been looking at two 10-to-life sentences, or he could have been looking at two 10-to-25-year sentences under the habitual statute. By pleading to the single offense, he eliminated that and only And additionally, even though it probably was not likely, it did open him to the possibility of asking for probation, which his counsel did ask for at sentencing. So whether or not it's likely or not, what we have to look at here is... And under the other two offenses as originally charged, there was no possibility of probation? Not under the burglary. So he could have potentially given probation on the attempted grand larceny, but not on the burglary charge. He would have been looking at a prison sentence. That is to say, so he pled to the only one if he had been convicted that gave the possibility of probation. He pled to a greater version of it, yes. But that would have allowed him to argue for probation, which he did at sentencing. And under the ineffective assistance claim, when we're looking at guilty plea cases like this, the petitioner has to show that he would have proceeded to trial, but for counsel's actions. And in this case, we actually have a wonderful record where the petitioner got up and explained exactly why he took that plea deal. He said he by going through a trial, even though he felt like he might have won on one of the charges and not the other. He felt that this particular judge was fair and was going to give him a fair sentence. And so he showed that he actually put a lot of thought into accepting this deal and why he went about doing so. Well, those reasons don't sound like real reasons. Those sound like propaganda that he's giving to the judge, hoping for a nice sentence. For probation. Yeah, right. I mean, he's just being nice to the judge. I'm not sure those were his reasons at all. We recognize those words. Potentially. But that is what he said, and that's what we have to go on. We can't, of course, interpret. When you say that's what we have to go on, we can attach different consequences or meaning to what he said or why he said it. We could try, but I think he is very clear in what he was hoping to accomplish with this case. He was under no pretenses that his history was clean here, that he was looking at a low sentence. Can I ask one more question, even though we're over time? It's not unusual for there to be, on a check charge, for example, some theft or forgery of a government check that clearly, on its face, has a value in excess of a thousand dollars or wherever the statute sets the limit. It used to be a thousand. I haven't looked at that statute for a while. And the plea is allowed to a lesser amount. That's the plea agreement. So that happens routinely, and it's part of the plea agreement process, even though factually it's not true. Correct. And so is this case like that? It is. I mean, it goes the opposite direction to an effect, but it's still a plea where he's looking and recognizing that the facts of his case don't necessarily meet the elements of what he's pleading to, but in order to accept some benefit or some perceived benefit, he's willing to enter that plea to move forward with his case. So it's not a fictitious plea. It's a plea bargain. It's a plea bargain. Yeah. It's a plea bargain to a statute where the facts, agreeably by all sides, do not support ultimately the elements of what he's pleading to. Yeah. Thank you. Thank you. And I'd ask that this I just want to make one factual clarification to start. Defense counsel did not ask for probation. At EOR 44, he says, I'm asking you not to adjudicate him as a habitual criminal, which the court had the discretion to do. And counsel says, I think here, four to 10 years concurrent with a prior case. But he said, if you're not inclined to ignore the habitual criminal statute, then that he be imposed five to 20 years. So that's very different than a probation recommendation. I think we all agree was not possible here. Mr. Milton's attempts to develop the record in state court and the thwarting by the state court to allow him to do that, I think, are enough for this court to remand this matter for development of the facts in support of the ineffective assistance of counsel claim. I'm asking this court to do that. Thank you. Thank both sides for quite helpful arguments. Thank you. Milton versus Nevin now submitted for decision.
judges: W. Fletcher, Ikuta, Barker